

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ADAM MACLAURY,<br><br>Defendant. | Case No. 1:21-CR-248 |

## STATEMENT OF FACTS

The United States of America and the defendant, ADAM MACLAURY, agree that had this matter gone to trial, the United States would have proven the following facts beyond a reasonable doubt with admissible, credible evidence:

1. From on or about February 18, 2021 to July 1, 2021, in the Eastern District of Virginia, the defendant, ADAM MACLAURY, knowing that he was an unlawful user of a controlled substance as defined in 21 U.S.C. § 802, did knowingly possess firearms, that is, 1) a Sig Sauer P365 9mm caliber pistol, serial number 66B410022; 2) a Sig Sauer P365 9mm caliber pistol, serial number 66B533130; and 3) a Colt Defense short-barreled rifle, serial number LE479961, said firearms having been shipped and transported in interstate commerce, all in violation of Title 18, United States Code Section 922(g)(3).

2. On February 18, 2021, MACLAURY knowingly purchased a Sig Sauer P365 9mm caliber pistol, serial number 66B410022. This firearm had traveled in interstate commerce during its existence. On his Virginia Firearms Transaction Record, he checked "no" to indicate that he was not "an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance." Immediately under this statement, the form

contained a warning that "[t]he use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside."

3. In various conversations from on or about February 12, 2021 through May 2021 with an undercover law enforcement employee (UCE) and other members of a loosely affiliated group, MACLAURY indicated that he was interested in owning guns for defense of himself and his family, as well as in preparation for conflict with law enforcement and individuals who held different viewpoints than his.

4. On February 27, 2021, MACLAURY was present at a meeting with other members of the group in Arlington, Virginia. UCE also attended the meeting. At that meeting, UCE observed MACLAURY carrying a sub-compact Sig Sauer 9mm handgun in his waistband.

5. On March 20, 2021, the group met in Champlain, Virginia to conduct firearms training. During that firearms training, MACLAURY fired a short-barreled rifle (SBR) that UCE had brought to the training. After firing UCE's SBR, MACLAURY messaged UCE on the encrypted messaging platform on March 22, 2021 and asked about purchasing a similar gun.

6. On April 15, 2021, UCE observed MACLAURY again carrying a sub-compact Sig Sauer 9mm handgun at a group meeting. He stated he was open carrying at the time because of a physical altercation in which he was recently involved.

7. On this same day, MACLAURY told UCE that he frequently purchased marijuana in Washington, D.C. without an approved license at a store called The Safe House. MACLAURY separately indicated that he had been smoking marijuana for ten years.

8. At another group meeting on April 21, 2021, MACLAURY again inquired about purchasing the SBR from UCE. UCE tried to make clear that it was illegal for MACLAURY to

possess the SBR, but MACLAURY cut him off and indicated he knew that the SBR was an illegal firearm. MACLAURY indicated he was not concerned about that fact.

9. MACLAURY told UCE during a meeting on April 29, 2021, that he had been smoking marijuana in his residence for the majority of the day by himself. MACLAURY told UCE he smokes approximately a half ounce of marijuana weekly. He commented that he knowingly did not indicate that he was addicted to marijuana when he recently completed his concealed weapon permit. MACLAURY said he did not consider himself addicted because he could stop using if he wanted to but did not have a reason to stop.

10. On May 21, 2021, MACLAURY re-introduced the idea of purchasing the SBR from UCE. UCE again confirmed that MACLAURY knew that the SBR was illegal because the barrel of the rifle was too short. MACLAURY later showed UCE the handgun that he was carrying in his waistband and indicated that he wanted the SBR to defend his household.

11. On May 21, 2021, MACLAURY texted UCE a picture of a glass pipe used to smoke marijuana and invited UCE over to smoke marijuana with him.

12. On May 24, 2021, MACLAURY told UCE during a phone call that he was in the process of obtaining marijuana. MACLAURY indicated that he had tried to quit smoking marijuana, but that morning had concluded that he needed to smoke again.

13. Also on May 24, 2021, MACLAURY planned the transaction with UCE where MACLAURY would acquire UCE's SBR. UCE and MACLAURY agreed that MACLAURY would give UCE his (MACLAURY's) Sig Sauer pistol with accessories and ammunition and then would pay an additional $600. UCE and MACLAURY agreed the handgun, accessories, and ammunition would be worth $900. MACLAURY told UCE he would be buying another handgun after he gave his handgun to UCE.

14. During this conversation on May 24, 2021, UCE and MACLAURY confirmed that they would not complete any paperwork to document the sale of the SBR. MACLAURY again confirmed that he knew he was purchasing an illegal gun.

15. On the evening of May 24, 2021, at MACLAURY's residence, MACLAURY transferred his Sig Sauer pistol to UCE as part of the previously agreed-upon sale of the SBR from UCE to MACLAURY.

16. While at MACLAURY's apartment on May 24, 2021, UCE saw a bong sitting on the floor by the couch and asked if that was MACLAURY's spot. Later that evening, MACLAURY crushed up some marijuana and mixed it with some tobacco, placed it in a bowl for the bong, and smoked from the bong in the presence of UCE. MACLAURY did this approximately four more times during the evening. UCE asked MACLAURY how often he smokes marijuana and he said, "I smoke more than I drink. In fact, you've known me mostly high." UCE then asked if MACLAURY smoked every day and he responded, "Yeah."

17. UCE asked MACLAURY how much marijuana he purchased and he held up a bag with marijuana in it and said, "This is one eighth of an ounce. And when that bag is full it looks like this." MACLAURY then held up a different, sealed bag with marijuana in it. MACLAURY explained that "for a heavy, every day smoker, it'll last me three days...I'm doing a half of an ounce every week...I'm buying a half for $150 dollars."

18. UCE showed MACLAURY the SBR that MACLAURY agreed to purchase from UCE and once again confirmed that MACLAURY understood that the weapon was illegal because the barrel was too short, but that he wanted to purchase it anyway. MACLAURY expressed excitement to UCE about having a pistol and a rifle once the deal was completed.

19. On June 2, 2021, MACLAURY knowingly purchased a Sig Sauer P365 9mm caliber pistol, serial number 66B533130. This firearm had traveled in interstate commerce during its existence. On his Virginia Firearms Transaction Record, he checked "no" to indicate that he was not "an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance." Immediately under this statement, the form contained a warning that "[t]he use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside."

20. On June 10, 2021, during a conversation at MACLAURY's residence, UCE and MACLAURY discussed the store where MACLAURY purchased his marijuana. MACLAURY indicated he had "good relations" with the store that he frequents, that the store extended him credit for his purchases of up to $150 per week, and that it had taken him "a while to earn that status." MACLAURY indicated that at that time, he owed the store $150.

21. On June 16, 2021 UCE and MACLAURY visited The Safe House in Washington, D.C. to purchase marijuana. MACLAURY advised UCE on what he usually purchased and indicated that he had been frequenting the store since he had moved back to the area. MACLAURY told UCE that he was not going to purchase any marijuana on that day because he had just purchased his weekly supply a few days prior.

22. When UCE and MACLAURY arrived at the marijuana store, MACLAURY knew the names of both of the salesmen at the store and greeted one by name. The salesman acknowledged that he knew MACLAURY too.

23. On June 16, 2021, MACLAURY told UCE that he had used cocaine the previous weekend.

24. On June 24, MACLAURY told UCE that he had used cocaine on June 19 and on June 23, 2021.

25. On the evening of July 1, 2021, MACLAURY and UCE met in Vienna, Virginia in order to complete the sale of UCE's SBR to MACLAURY. MACLAURY gave UCE $600, and MACLAURY knowingly took possession of the SBR.

26. The SBR that MACLAURY purchased is a firearm as described in Title 26, United States Code Section 5845(a). This firearm had traveled in interstate commerce during its existence. UCE and MACLAURY completed no paperwork to document the transaction, and the SBR is not registered in accordance with the requirements of the NFA. Although the firing pin of the SBR had been shaved down so that the gun would not fire, the SBR could be easily restored to operable conditions.

27. This statement of facts includes those facts necessary to support the defendant's plea of guilty to the charges listed in the indictment in this case. It does not include each and every fact known to the defendant or to the United States, and is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

28. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully Submitted,

Jessica D. Aber
United States Attorney

Date: 11/9/21        By: _____
Zoe Bedell
Thomas Traxler
Assistant United States Attorneys

7

<u>Defendant's Stipulation and Signature</u>: After consulting with my attorney I hereby stipulate that the above Statement of Facts is true and accurate, and that if the matter proceeded to trial, the United States would have proven the same beyond a reasonable doubt.

Date: 11-9-21

Adam MacLaury
Defendant

<u>Defense Counsel's Signature</u>: I am the attorney for the defendant, Adam MacLaury, in this case. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is informed and voluntary.

Date: 11/9/21

Whitney Minter
Counsel for the Defendant

8