IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> ADAM MACLAURY, <br><br> Defendant. | Case No. 1:21-CR-248 |

**UNITED STATES'S POSITION ON SENTENCING**

The defendant, Adam MacLaury, comes before the Court for sentencing after pleading guilty to possessing a firearm as an unlawful user of a controlled substance. The United States requests that this Court adopt the findings of the Presentence Investigation Report (PSR). As reflected in the PSR, the Sentencing Guidelines recommend a period of incarceration of 30 to 37 months.

Based on that advisory Guidelines range and the relevant 18 U.S.C. § 3553(a) factors, including the nature of the offense, the history and characteristics of this defendant, and the need for deterrence, the United States recommends a sentence of 30 months. Such a sentence appropriately captures the seriousness of the defendant's conduct, which involved his possession of multiple weapons, including a short-barrel rifle not registered to him, while using illegal narcotics heavily and on a daily basis, and as part of his participation in a self-styled militia group committed to preparing for conflict with the United States government and others who did not share their views. Such a sentence would also send a firm but appropriate message that such groups must act within the bounds of the law.

I.      **Factual Background**

The Defendant's Gun Purchases

The defendant's conviction arises from his involvement with a group of individuals operating in northern Virginia that compared itself to and modeled itself after a known militia group dedicated to separating from the United States.  PSR, ECF No. 43, ¶¶ 15, 18.  The defendant joined the group for "defensive purposes."  PSR ¶ 21.  The defendant was interested in preparing for conflict with law enforcement and people holding viewpoints different than his own.  PSR ¶ 27.  Moreover, he wanted to own firearms in preparation for that conflict, and to defend himself and his family.  PSR ¶¶ 27, 34.  He sought advice from other members of the group on procuring, training with, and shooting firearms.  PSR ¶ 19.

The other members of the group were also interested in resistance to and violence against the United States government, and they discussed the needs for firearms to that end.  PSR ¶¶ 15, 18, 19.  Like the defendant, the group sought to prepare for future conflict against the United States government and law enforcement.  PSR ¶¶ 18, 27.  In that vein, members of the group were present in and around the United States Capitol during the riots on January 6, 2021, and they used the group chat that the defendant was a part of to plan and execute surveillance of the U.S. Capitol following January 6 to determine weaknesses around the perimeter.  PSR ¶¶ 14, 17.

The defendant contributed to the group's mission in numerous ways.  For example, he offered to obtain land where the group could conduct training events.  PSR ¶¶ 18, 21.  Moreover, the defendant was present in meetings when the group members discussed violence against the United States government and an interest in forming a semi-autonomous region in the United States that was separate from the government.  PSR ¶ 18.  In fact, it was in support of these plans that the defendant offered to acquire land for training.  PSR ¶ 18.  The defendant also drove

members of the Proud Boys, a nationalist organization that describes itself as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world, aka Western Chauvinists,"[1] from the airport to the U.S. Capitol on January 6, 2021 prior to the riots. *See* PSR ¶ 20.

While he was involved in the local militia group, on February 18, 2021, the defendant purchased a 9mm Sig Sauer pistol. PSR ¶ 26. The required purchase paperwork specifically warned that using marijuana remained illegal under federal law, regardless of its legal status under state law. PSR ¶ 26. In filling out the purchase paperwork, the defendant checked "no" to indicate that he was not "an unlawful user of, or addicted to, marijuana." PSR ¶ 26. The defendant carried this pistol with him to militia group meetings. *See, e.g.,* PSR ¶¶ 28, 30.

On March 20, 2021, the group met in Champlain, Virginia to conduct firearms training. PSR ¶ 29. During this event, the defendant fired a short-barrelled rifle (SBR) that an undercover FBI employee (UCE) had brought to the training. PSR ¶ 29. Short-barrelled rifles are regulated "firearms" under the National Firearms Act, *see* 26 U.S.C. § 5845(a)(3), and it is unlawful for a person to receive or possess such a firearm if it is not registered to that person in the National Firearms Registration and Transfer Record, *see id.* § 5861(d). After firing the SBR, the defendant messaged the UCE on an encrypted platform to ask about purchasing a similar weapon. PSR ¶ 29.

On April 21, 2021, the defendant again asked UCE about purchasing the SBR. PSR ¶ 32. UCE tried to make clear that it was illegal for the defendant to possess the SBR, but the

---

[1] Proud Boys members routinely attend rallies, protests, and other First Amendment-protected events, where they sometimes engage in violence against individuals whom they perceive as a threat to their values. The group has an initiation process for new members, who often wear yellow and black polo shirts or other apparel adorned with the Proud Boys logo to events.

3

defendant interrupted, said he knew that the SBR was an illegal firearm, and indicated he was not concerned about that fact. PSR ¶ 32. The defendant raised the issue with UCE again on May 21, 2021, and UCE again confirmed that the defendant understood that the SBR was illegal because the barrel was too short. PSR ¶ 34. The defendant indicated that he wanted the SBR to defend his household. PSR ¶ 34.

On May 24, 2021, the defendant and UCE planned the SBR sale as a two-step process. *See* PSR ¶ 37. First, the defendant would give UCE the defendant's Sig Sauer pistol with accessories and ammunition, and then the defendant would later pay an additional $600. PSR ¶ 37. The defendant and UCE confirmed they would not complete any paperwork to document the sale, and the defendant once again confirmed that he knew he was purchasing an illegal gun. PSR ¶ 38. The defendant completed the first step of the process and transferred his Sig Sauer pistol to UCE that evening. PSR ¶ 39.

On June 2, 2021, the defendant purchased another 9mm Sig Sauer pistol. PSR ¶ 43. Despite the warning about marijuana again appearing on the form, the defendant once again indicated that he was not "an unlawful user of, or addicted to, marijuana." PSR ¶ 43.

On the evening of July 1, 2021, the defendant and UCE met to complete the sale of the SBR. PSR ¶ 49. The defendant gave UCE $600, and the defendant knowingly took possession of the SBR. PSR ¶ 49. The defendant completed no paperwork to document the transaction, and the SBR was not registered in accordance with the requirements of the National Firearms Act. PSR ¶ 50.

The Defendant's Drug Use

Throughout the period of time during which he possessed the three guns, the defendant consistently used drugs, particularly marijuana. The defendant has indicated that he smoked

marijuana daily, PSR ¶¶ 40, 109, had smoked for the last ten years, PSR ¶ 31, and consumed half an ounce weekly, PSR ¶¶ 33, 41.  He considered himself a "heavy" smoker.  PSR ¶ 41.  He told UCE that he frequently purchased marijuana illegally at a store in Washington, D.C., where he was a sufficiently regular customer that the store let him purchase marijuana on credit.  PSR ¶¶ 31, 44.  The defendant claimed at the time that he did not consider himself addicted to marijuana, but he chose not to quit because he did not have a reason to stop.  PSR ¶ 33.  When the defendant later tried to quit smoking, he failed.  PSR ¶ 36.  The defendant has since determined he has a marijuana addiction.  PSR ¶ 109.  He also admitted he used marijuana on July 1, 2021, the day he purchased the SBR.  PSR ¶ 109.

UCE confirmed the defendant's statements regarding his marijuana use on numerous occasions.  For example, on May 21, 2021, the defendant texted UCE a picture of a glass pipe used to smoke marijuana and invited UCE over to smoke with him.  PSR ¶ 35.  On the evening of May 24, 2021, UCE visited the defendant's residence, where he saw the defendant smoke marijuana five times over the course of the evening.  PSR ¶ 40.  This was the same night that the defendant showed UCE his pistol, negotiated the purchase of UCE's SBR, and transferred his pistol to UCE as part of that sale.  PSR ¶¶ 37-39.  On June 16, 2021, the defendant took UCE with him to visit the store where the defendant purchased his marijuana and assisted UCE with his purchase.  PSR ¶ 45.  The defendant was on a first-name basis with the store employees.  PSR ¶ 46.

Procedural History

The defendant was arrested on July 1, 2021, after knowingly taking possession of the SBR.  On July 2, 2021, the United States charged the defendant by criminal complaint with possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C.

§ 922(g); false statement on firearms purchase forms, in violation of 18 U.S.C. § 924(a)(1)(A); and possession of an unregistered firearm, in violation of 26 U.S.C. § 5861. The government did not seek pretrial detention.

After two extensions of the time for indictment, the defendant entered a preindictment plea on November 9, 2021. Pursuant to the parties' plea agreement, he pleaded guilty to a single-count criminal information charging him with possession of a firearm by a prohibited person, namely, his possession of the Sig Sauer P365 9mm pistol on June 2, 2021. ECF Nos. 39, 41. The defendant was continued on bond pending this sentencing hearing.

## II.     Guidelines Calculations

As the Court is aware, although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 261 (2005). Thus, at sentencing a court "must first calculate the Guidelines range" applicable to the defendant. *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see also Gall v. United States*, 552 U.S. 38, 49-50 (2007).

Here, the PSR accurately calculated the applicable Guidelines range as 30 to 37 months. The United States agrees with the U.S. Probation Office that the calculation of the appropriate Guidelines for this defendant is as follows:

| Guideline(s) | Description | Offense Level |
|---|---|---|
| § 2K2.1(a)(4)(B) | Base offense level (Defendant committed the offense of unlawful possession of firearms involving a firearm described in 26 U.S.C. § 5845(a) and was a prohibited person at the time he committed the offense) | 20 |
| § 2K2.1(b)(A) | Two-level enhancement for offense involving 3-7 firearms | +2 |
| § 3E1.1(a) | Acceptance of responsibility | -2 |
| § 3E1.1(b) | Acceptance of responsibility | -1 |
| **Total Offense Level** | | **19** |

In accordance with the defendant's plea agreement, the government supports a two-level reduction for the defendant's acceptance of responsibility under Guidelines § 3E1.1(a) and hereby moves for the one-point reduction in offense level under Guidelines § 3E1.1(b). The final offense level is 19. Because the defendant is in Criminal History Category I, the resulting Guidelines range is 30 to 37 months.

### III. Section 3553(a) Factors

After calculating the applicable Guidelines range, a sentencing court must then consider that range, as well as the sentencing factors set forth in § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). With respect to 18 U.S.C. § 3553(a)'s enumerated factors, of particular relevance here are the "nature and circumstances of the offense," the need for the sentence "to reflect the seriousness of the offense" and provide "just punishment," "the history and characteristics of the defendant," the need "to promote respect for the law," and the need for the sentence "to afford adequate deterrence to criminal conduct." § 3553(a)(1), (a)(2)(A), (a)(2)(B). As explained below, based on those factors, the United States submits that a sentence at the low end of the Guidelines range of 30 months is

warranted, appropriate, and reasonable in this case.

  A. *A sentence of 30 months is necessary based on the nature, circumstances, and seriousness of this offense.*

  The nature and circumstances of the defendant's possession of guns while being a daily drug user was particularly dangerous and serious in this case. The defendant went out of his way to acquire three different guns in a period of barely five months. One of those guns was a short-barreled rifle, which was illegal for the defendant to receive and possess regardless of his drug use. Moreover, the defendant acquired these guns as part of an effort to prepare for violent conflict with the United States government, law enforcement, and people who did not share his views on the world. The defendant not only actively trained for such conflict, but also volunteered to help facilitate additional training. In furtherance of these views, he expressed interest in joining the Proud Boys, a nationalist organization that is known to engage in violence against individuals whom they perceive as a threat to their values, and he assisted members of the Proud Boys on January 6, 2021. Possessing weapons while under the influence of narcotics was particularly dangerous given the violent rhetoric and people the defendant chose to surround himself with.

  The seriousness of this already inherently dangerous conduct was exacerbated by the defendant's heavy and daily use of drugs while in possession of the guns. The defendant was not an occasional marijuana smoker, but a marijuana addict who could not stop himself from smoking, even when he tried. He was a sufficiently regular customer at his marijuana supply store that he was on a first-name basis with the employees; his business was so consistent that they extended him a line of credit to help finance his purchases. Moreover, the defendant told UCE that he had been high on essentially every occasion that they had met—including numerous occasions when the defendant had had his gun on him. The defendant even smoked marijuana

8

five times during the evening that he had invited UCE over to arrange the SBR purchase, and he admits he used marijuana on July 1, 2021, the day he finalized the SBR purchase and took possession of the illegal gun.

Finally, the defendant acquired his guns in a particularly problematic context. As an initial matter, he knowingly lied on his firearms purchase forms, representing that he was not an unlawful user of marijuana even while he bragged about using marijuana daily. Additionally, the defendant proposed buying the SBR and actively pursued that purchase on several occasions when UCE had not followed up or raised the subject. Moreover, the defendant was insistent on proceeding despite knowing that the gun was illegal. UCE warned the defendant repeatedly that he could not legally possess this gun—regardless of his status as an unlawful user of drugs—but the defendant was undeterred. He continued to brush aside UCE's warnings and made clear that he was determined to own the gun regardless of the legal consequences.

Accordingly, given the nature and seriousness of the defendant's conduct, the United States asks this court to sentence him to a term of imprisonment of 30 months.

  B. *A sentence of 30 months is necessary in light of the defendant's personal history and characteristics.*

A sentence of 30 months also is necessary and appropriate in light of the defendant's personal history and characteristics. While the defendant has experienced a disruptive early family life, he also has had a supportive stepfather and access to regular therapy, medication, and other treatment for any medical and mental health problems he has experienced. He had the resources and ability to graduate from a prestigious and rigorous private college. And he had the connections to obtain a desirable job selling restaurant franchises, even after other jobs did not work out.

But despite all these available opportunities and resources that could have contributed to

his success, the defendant instead repeatedly chose to break the law. He developed an extensive history of drug use that extends well beyond the daily marijuana use charged in the present offense. In addition to marijuana, the defendant admits he was also addicted to cocaine, and he confesses a history of using other drugs. PSR ¶ 109. There is no indication that the defendant sought help for his substance abuse prior to his arrest.

The defendant's record also reflects multiple arrests (though no prior convictions) for various offenses ranging from urinating in public to domestic violence and assault. PSR ¶¶ 73-75. These run-ins with the law evidently had no effect on the defendant's behavior. Instead, his disregard for the law only escalated as he joined a group interested in violence against the United States government, law enforcement, and people holding different views than his own; as he trained for violence to help create a semi-autonomous region; and as he flirted with a "Western Chauvinist" group known to use violence against individuals whom they perceive as a threat to their values. He armed himself in preparation for defending and furthering these views.

When the defendant was arrested by the FBI and faced federal charges, he enrolled in private mental health and substance abuse treatment. While the defendant can be commended for finally taking that step, the fact remains that this option was available to him before he engaged in the unlawful conduct at issue in this case. The defendant is an adult who had the resources available to improve his circumstances and make lawful choices. His personal history provides no reason to deviate below the applicable Guidelines range.

At the same time, however, the government submits that a sentence at the low end of that advisory Guidelines range is appropriate in this case. The defendant's efforts to seek mental health and substance abuse treatment indicate that he has accepted responsibility for his actions and shown a commitment to getting his life back on a positive track. Accordingly, although a

meaningful sentence of incarceration is warranted, a sentence of 30 months would be adequate to account properly for this defendant's personal history and characteristics, while still enabling him to return to his family and life with many years ahead of him as a law-abiding citizen.

    C.    *A sentence of 30 months is necessary to promote respect for the law and afford adequate general deterrence of participation in similar schemes.*

The need for general deterrence also warrants a sentence of 30 months. General deterrence is important in any case, but it is particularly important here. While extremist and even violent views are constitutionally protected, individuals do not enjoy unfettered license to violate the law in pursuing those beliefs. As these groups proliferate and their views and conduct become more public, it is important to communicate that there are legal lines that cannot be crossed, and consequences for when that happens.

**V.**    **Conclusion**

For the reasons stated, the United States requests that this Court impose a term of incarceration of 30 months.

Respectfully Submitted,

Jessica D. Aber
United States Attorney

Date: _March 9, 2022_____

By:    _____/s/_____
Zoe Bedell
Thomas Traxler
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Ave
Alexandria, Virginia 22314
Phone: 703-299-3700
Zoe.bedell@usdoj.gov
Thomas.traxler@usdoj.gov

**Certificate of Service**

I certify that on March 9, 2022, I electronically filed the foregoing response with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

By:            /s/
Zoe Bedell
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Office: (703) 299-3700
Fax: (703) 299-3980
Email: zoe.bedell@usdoj.gov