**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:21CR248** |
| | ) | **Hon. Anthony J. Trenga** |
| **ADAM MACLAURY,** | ) | **Hearing: March 16, 2022** |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S POSITION ON SENTENCING FACTORS

On the day he was arrested, Adam MacLaury was a young man defined by ███████████████████████████████████████████████████████. Those burdens led him straight into the arms of the group that inspired him to commit the instant offense. But today Mr. MacLaury is clear headed and committed to repairing the damage done to him by others in his past, to ensure he never engages in this conduct again. In light of the great strides that he has made ████████ ███████████████████████, Mr. MacLaury respectfully requests that this Court sentence him to a period of probation with either a special condition that he continue to reside in a sober living facility or a special condition that he serve a period of home confinement.

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure and this Court's Policy Regarding Procedures to be Followed in Guideline Sentencing, the defendant, Adam MacLaury, through counsel, states that he has received and reviewed the Presentence Investigation Report ("PSR") prepared in this case and submits the following corrections, objections and argument.

1

## OBJECTIONS TO THE GUIDELINES CALCULATIONS

Mr. MacLaury has no objections to the sentencing guidelines calculation at this time.

## OBJECTIONS TO THE PRESENTENCE REPORT

Mr. MacLaury has no objections to the Presentence Report at this time.

## SENTENCING ARGUMENT

### I.    The 18 U.S.C. § 3553(a) Sentencing Factors.

The Supreme Court in *Kimbrough v. United States*, 128 S. Ct. 558 (2007), and *Gall v. United States*, 128 S. Ct. 586 (2007), established that the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory considerations spelled out in 18 U.S.C. § 3553(a).  In two summary reversals, moreover, the Court expressed in no uncertain terms that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 555 U.S. 350, 129 S. Ct. 890 (2009); *Spears v. United States*, 555 U.S. 261, 129 S. Ct. 840 (2009).

While sentencing courts are to *consider* the sentencing Guidelines, Congress has *required* federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in paragraph 2 of § 3553(a) of Title 18.  Those factors include (a) the nature and circumstances of the offense and the history and characteristics of the defendant; (b) the kinds of sentences available; (c) the Guideline range; (d) the need to avoid unwarranted sentencing disparities;

2

(e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. § 3553(a).

The overriding principle and basic mandate of § 3553(a) requires district courts to impose a sentence "*sufficient, but not greater than necessary,*" to comply with the four purposes of sentencing set forth in Section 3553(a)(2): retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment"), deterrence, incapacitation ("to protect the public from further crimes"), and rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").  The sufficient-but-not-greater-than-necessary requirement is often referred to as the "parsimony provision."  This requirement is not just another factor to be considered along with the others set forth in Section 3553(a); rather it sets an independent limit on the sentence.

## II.  In consideration of all the § 3553(a) factors, a sentence of probation with a special condition of either residence in a sober living facility or home confinement is appropriate.

As portions of his argument should properly be filed under seal, Mr. MacLaury hereby presents a redacted version of his Position on Sentencing.  A complete version will be filed under seal in his unredacted Position on Sentencing.  Any documents which should properly be under seal will be attached to Mr. MacLaury's unredacted Position on Sentencing.

**A.**



---

[1] Psychological Evaluation by Dr. Travis Flower ('Flower Report') at 2.
[2] *Id.*
[3] *Id.*
[4] Flower Report at 9.

---

[5] PSR ¶ 77.
[6] PSR ¶ 79.
[7] PSR ¶ 81.
[8] PSR ¶ 79.
[9] Flower Report at 9.
[10] Flower Report at 9-10.
[11] PSR ¶ 88.

---

[12] Flower Report at 5.
[13] *Id.*
[14] PSR ¶ 92.
[15] Flower Report at 6.
[16] Flower Report at 9.
[17] *Id.*



[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] PSR ¶ 82.
[22] *Id.*



---

[23] Flower Report at 8.
[24] *Id.*
[25] Flower Report at 8.
[26] Flower at 6.
[27] PSR ¶ 95.
[28] PSR ¶ 99.
[29] PSR ¶ 100.
[30] *Id.*



**B.** **Because he is already addressing the challenges that led him to commit this offense, a sentence of probation in this case is sufficient to prevent Mr. MacLaury from committing future offenses.**



---

[31] *Id.*
[32] *See* Letter from Renee Nilson
[33] *Id.*
[34] *Id.*
[35] *See* Letter from Judy Crane.

9

██████████████████████████████████████████

████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██ Indeed, it is now clear that support and supervision provide the environment where Mr. MacLaury is healthiest.  Structure, therefore, is a critical part of deterrence in this case.

This Court can provide that structure by fashioning a sentence that includes a period of supervision.  But the unlikely event that he should stumble in the future, this Court retains full authority to sentence him to imprisonment at that time.  Accordingly, there is no need to sentence him to a lengthy period of incarceration now.  This Court can give Mr. MacLaury the opportunity to show that he has truly made fundamental changes to his life that will keep him on the right course in the future.

Most importantly, having a plan to address his mental health and substances abuse issues is the critical piece to ensure he will not return to this conduct.   The solution to both his uncharacteristic actions and his substance abuse is treating these issues.  He will receive the best form of that treatment is in the community.  Under any circumstances, but certainly in light of the extensive therapy he has received, the deterrent value of incarceration is minimal for Mr. MacLaury.  Rather,

the key to preventing Mr. MacLaury from engaging in reckless behaviors to self

soothe is to address his mental health and substance abuse issues.

### C. The nature and circumstances of the offense warrant a sentence of probation with special conditions.

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████ █ ████████████████

██████████████████████████████████████

████████████████████   Seeking acceptance is a common reason why a young

person joins a group engaged in inappropriate or unlawful behavior.[37]  What is

unique here is the degree to which Mr. MacLaury suffered from circumstances that

led him to crave that acceptance and the degree to which he has worked to remedy

that.

These distinctions are important because they not only explain why the

offense came to be committed, but they also shed light on the seriousness of the

offense.  Mr. MacLaury fully admits his actions were illegal and he does not

diminish the serious nature of a firearms offense.  He acknowledges the cause for

concern that he possessed these firearms while in such a vulnerable state.  But

---

[36] Flower Report at 10.

[37] "Many youth join a gang to build relationships with other people in their age group. Some researchers believe that youth join gangs to address the needs associated with adolescent identity development and that they are looking for a sense of belonging. Other researchers note that youth who join gangs are marginalized, rejected or ignored in other areas of their lives — family, school or church, for example — and therefore identify with a gang to fill a need for support." *Changing Course: Preventing Gang Membership*, https://nij.ojp.gov/topics/articles/changing-course-preventing-gang-membership (citations deleted).

there is a significant disconnect between Mr. MacLaury's intentions in associating with these individuals and the serious nature of the firearms that he possessed. He did not begin his association with them to ultimately possess a short-barreled rifle. He wanted to belong, to fit in, to find acceptance, and to be liked. Mr. MacLaury found acceptance in this group – perhaps the first group that actually wanted him – and in the undercover officer who interacted with him. To be sure, Mr. MacLaury willingly engaged in conversations with the undercover officer about firearms and controlled substances. But he also engaged in conversations about dates, workouts, cars, and weekend plans.

And although the actions that led to his arrest were indeed serious, Mr. MacLaury did not purchase this gun to further a drug trade, to threaten anyone, or to commit any crimes or acts of violence. Accordingly, while the possession of a short-barreled rifle or any firearm while a user of controlled substance is a serious offense, that conduct is very remote from what Mr. MacLaury was actually doing by purchasing it. Put differently, possessing the firearm was the means to the end goal of fitting in. It was not the goal.

Certainly it can be argued that there were other ways to join this group or seek approval that did not require possessing this firearm. Although that is true on some level, there are two reasons why Mr. MacLaury would have felt an urge to do so. ████████████████████████████████████████████████████

12

████████████████████ █ ███████████████████████████

███████████████████████████████████████████████

████████████████████████████████ Second, tough talk and

possession and utilization of firearms was a core aspect of the group.  In order to

truly connect, Mr. MacLaury would need to outwardly endorse those same beliefs.

While this does not excuse his unlawful behavior, there is a straight line from

the trauma Mr. MacLaury experienced to his need for acceptance to his

participation in the instant offense.  These compelling facts require an unusual

sentence: one that fully considers that Mr. MacLaury's past trauma, mental health

challenges, and substance abuse issues drove his participation in this offense.

**D.    Any sentencing disparities in this case are wholly warranted by the circumstances of Mr. MacLaury's case.**

A sentence of probation is warranted based on the individualized sentencing

this Court must engage in.  First, as discussed above, Mr. MacLaury's history and

characteristics and his mental health and substance abuse issues led to this offense.

While no one but Mr. MacLaury is responsible for his actions, there are countless

individuals who are charged under this statute whose offenses are committed

without any such mitigating personal history.  Second, Mr. MacLaury has

undertaken a far more significant effort to address the issues that led to this offense

than the average defendant.

---

[38] Flower Report at 10.

Unlike the guidelines, this Court can impose a sentence consistent with the other factors under 18 U.S.C. § 3553. This does not create any unwarranted sentencing disparities. Rather, it is exactly the outcome the statute requires and, to the extent that any sentencing disparities are created, they are fully warranted due to the facts of this case.

Furthermore, sentencing data from the United States Sentencing Commission shows that 5.7% of defendants sentenced last year received a sentence of only probation (4.5%) or probation and a sentencing alternative (1.2%).[39] While, at first glance, that number seems small, it means that more than one out of every twenty defendants sentenced for a firearms offense did not receive a sentence of incarceration.

More importantly, it is a critical reminder that the statute here permits a sentence of probation. Congress has determined that, despite committing the offense of possessing a firearm as a prohibited person, there are defendants who should appropriately be sentenced to a term of probation. If the circumstances behind Mr. MacLaury's conduct and the incredible efforts he has made to remedy them do not warrant a sentence of probation, then it is difficult to imagine a case that does. In short, although a term of probation would be a distinctive sentence, it is not only permitted, but warranted here.

---

[39] United States Sentencing Commission Quarterly Data Report at 10 (found at
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC_Quarter_Report_4th_FY21.pdf).

**E.    A sentence of probation with special conditions is consistent with the Parsimony Clause, as the Guidelines fail to recommend a just sentence.**

The guideline at issue here is driven solely by the guns involved: the type, number and use or potential use.[40]  They do not account for Mr. MacLaury's history and characteristics.   They cannot distinguish between someone like Mr. MacLaury - who was engaged in this conduct as part of a perfect storm of neglect, need, and mental health challenges - and someone who engages in this conduct with cruel, selfish or violent intent.

Moreover, they cannot account for the disconnect between the offense and Mr. MacLaury's actual intent.  As discussed above, Mr. MacLaury's true goal was not to possess one particular firearm, but to engage in this group and fit in.  That the guidelines place such significant weight on the nature of the firearm overstates that particular fact in any case.  But it is all the more pronounced here, given that the nature of the firearm was secondary to Mr. MacLaury.

The guidelines also do not account for deterrence.  Within days of his arrest, Mr. MacLaury undertook to address the issues that have plagued him for most of his life.  ███████████████████████████████████████████████████████ ██████████████████████████████████████  With these key factors in place, his likelihood of ever engaging in this conduct again is greatly diminished.  Yet the guidelines provide no way to consider this.  Indeed, had Mr.

---

[40] PSR ¶ 36-43.

MacLaury made none of these strides for the past eight months, his guidelines would be exactly the same as they are currently calculated.

Therefore, while the Court must consider the guidelines, the Court can also consider that, beyond being just a single sentencing factor, the guidelines in this case measure but one lone aspect of Mr. MacLaury's offense.  As such, the guidelines provide very little guidance as to an appropriate sentence and should be given minimal weight in this case.

> **F.**     **A period of incarceration would derail Mr. MacLaury's opportunities to obtain needed mental health and substance abuse treatment.**

There can be no question that Mr. MacLaury continues to need significant mental health and substance abuse treatment.  And there is now no doubt that he will accept that treatment wholeheartedly. ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ He has obtained employment and is prepared to make a life for himself in Florida.  The best way for Mr. MacLaury to continue his upward trajectory is to remain with the program he has established.  While the Bureau of Prisons can provide some form of both mental health and substance abuse treatment, there is no certainty that Mr. MacLaury would be able to access those programs or reason to believe that the scope and quality of treatment would be the same.  The ability to find specific treatment programs for trauma recovery is limited, even in the community.  Any lengthy

period of incarceration would mean an abrupt end to the productive and specific treatment that Mr. MacLaury has participated in since last August.

A sentence that permits him to continue participating with the same treatment providers, while progressing towards a stable life in the community, will accomplish the goals of providing correctional treatment in the most effective manner.

## **CONCLUSION**

In sum, the appropriate sentence is a term of probation, with a special condition that Mr. MacLaury ███████████████████████████ or a special condition that he serve a period of home confinement.  Such a sentence is warranted given: (1) Mr. MacLaury's mental health issues and their direct contribution to the offense, and (2) the fact that any period of incarceration would be significantly disruptive to the progress he has made in treatment and stands to make going forward.

Respectfully submitted,

ADAM MACLAURY
By Counsel,
Geremy C. Kamens,
Federal Public Defender

By: _____/s/_____
Whitney E.C. Minter
Va. Bar # 47193
Assistant Federal Public Defender
Attorney for Mr. MacLaury
1650 King Street, Suite 500
Alexandria, Virginia   22314
(703) 600-0855 (telephone)
(703) 600-0880 (facsimile)
Whitney_Minter@fd.org (email)